## IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF ARKANSAS
### WESTERN DIVISION

**ANTHONY JAMES THOMAS, Jr**                                         **PLAINTIFF**

**V.**                          **CASE NO. 4:08CV03840 SWW/BD**

**KARL BYRD,** *et al.*                                         **DEFENDANTS**

### RECOMMENDED DISPOSITION

**I**.    **Procedure for Filing Objections:**

The following Recommended Disposition has been sent to United States District

Court Judge Susan Webber Wright.  Any party may serve and file written objections to

this recommendation.  Objections should be specific and should include the factual or

legal basis for the objection.  If the objection is to a factual finding, specifically identify

that finding and the evidence that supports your objection.  An original and one copy of

your objections must be received in the office of the United States District Court Clerk no

later than eleven (11) days from the date you receive the recommended disposition.  A

copy will be furnished to the opposing party.  Failure to file timely objections may result

in waiver of the right to appeal questions of fact.

Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite A149
Little Rock, AR 72201-3325

II.   **Introduction**:

Plaintiff Anthony James Thomas, Jr., previously a pretrial detainee in the Faulkner County Detention Facility (FCDF), filed this 42 U.S.C. § 1983 action pro se (docket entry #2) alleging constitutional violations by FCDF employees.  Plaintiff raised additional allegations in an amended complaint (#8), second amended complaint (#11), and third amended complaint (#20).  Plaintiff sued Defendants in their personal capacities only (#11).  There is no jury demand.

Currently pending are Defendants' Motion to Dismiss (#67), regarding Plaintiff's alleged failure to respond to discovery, and Defendants' Motion for Summary Judgment (#73).  The Court recommends that the Motion to Dismiss (#67) and the Motion for Summary Judgment (#73) be DENIED.

After holding an Evidentiary Hearing on September 2, 2009, this Court recommends an award of $500.00 for Plaintiff regarding the use of excessive force by Defendant Roberson.  This Court recommends that all other pending claims be DISMISSED WITH PREJUDICE.

III.   **Background**:

Plaintiff alleged that, while detained at the FCDF, he was: (1) pepper sprayed without cause; (2) chained to a hitching post; (3) subjected to unconstitutional conditions of confinement; (4) given blended meals instead of regular meals; (5) threatened with a taser; (6) denied regular showers; (7) denied use of the grievance process; (8) placed in "lock-down" for no reason; and (9) denied timely legal mail.  Plaintiff named Karl Byrd,

2

Bobby Brown, John Randall, Todd Shock, Brianna Pickard, Blake Roberson, Wade, Glen

Wilcox, Shaun Thomas and Danny Lewis as Defendants.

The Court screened Plaintiff's complaint (#2), amended complaint (#8), second

amended complaint (#11) and third amended complaint (#20), and dismissed the blended

meals, taser threat, grievance process, and legal mail claims.  In addition, part of

Plaintiff's Due Process claim was dismissed.  As a result, Defendants Brown, Randall,

and Wade were dismissed from the lawsuit.

After screening, the remaining claims allege that: (1) Defendants Shock, Thomas,

Lewis, and Roberson used excessive force against Plaintiff by pepper spraying him

without sufficient cause; (2) Defendants Shock and Thomas chained Plaintiff to a hitching

post; (3) Defendants Byrd, Wilcox, Shock, and Pickard exposed Plaintiff to

unconstitutional conditions of confinement by placing him in an overcrowded cell,

denying him the use of a sleeping mat, and denying him regular showers; and

(4) Defendants Byrd, Shock, and Roberson violated Plaintiff's Due Process rights by

placing him in "lock-down" without cause.

IV.    **Pending Motions:**

A. *Motion to Dismiss*

Defendants filed a motion to dismiss (#67) under Rule 41(b) for Plaintiff's alleged

failure to respond to discovery and a Court Order.  Defendants moved to compel Plaintiff

to respond to discovery requests (#63), and Plaintiff was ordered to respond to that

motion (#65).  After Plaintiff failed to file a response, Defendants filed the pending

motion to dismiss (#67).  The Court ordered Plaintiff to respond to the motion to dismiss (#69), but that same day, Plaintiff responded to the motion to compel stating that he had "sent answers to Defendants several months ago and [had] called and requested several copies of [his] answers to defendants questions/discovery."  (#71, p. 1)  Defendants did not reply to Plaintiff's assertion that he had answered Defendants' discovery requests.

Based on this record, Defendants' motion to dismiss cannot be granted. Accordingly, the Court recommends that Defendants' motion to dismiss (#67) be DENIED.

B. *Motion for Summary Judgment*

Defendants also have filed a motion for summary judgment (#73) contending that they are entitlement to qualified immunity and judgment based on that immunity.  In addition, Defendants contend that Plaintiff's case is subject to dismissal because he failed to exhaust his administrative remedies regarding several conditions-of-confinement claims (#74, p. 6-7).  In fact, Defendants' primary argument regarding Plaintiff's claims based on unconstitutional conditions of confinement is that Plaintiff failed to exhaust his administrative remedies.  Since failure to exhaust is an affirmative defense, Defendants bear the burden of proof on this defense.  They have not met that burden.  Furthermore, they misapprehend Supreme Court precedent on the issue of exhaustion.

1. *Exhaustion*

Defendants argue that "[w]hen all claims have not been exhausted, the case is subject to dismissal."  (#74, p. 7)  They state further that "[d]ismissal of the case is proper

4

when at least some of the claims are unexhausted." (#74, p. 7)  In 2007, the Supreme

Court rejected the total exhaustion approach argued by Defendants.  *Jones v. Bock*, 549

U.S. 199, 220-224, 127 S.Ct. 910, 923-926 (2007).  Thus, this argument for dismissal is

not supported by existing law.

Even had the Supreme Court's 2007 precedent not mandated denial of the motion,

Defendants failed to provide any evidence of Plaintiff's alleged failure to exhaust.  The

motion does not contain a single affidavit or declaration from an official at the FCDF

with knowledge of Plaintiff's grievance history.

Furthermore, no one at the evidentiary hearing was able to testify about Plaintiff's

grievance history.  To the contrary, when Defendant Shock testified, he admitted that he

had not reviewed the history of Plaintiff's grievances and did not know whether Plaintiff

had exhausted his administrative remedies.  Because failure to exhaust is an affirmative

defense, Defendants appear to have abandoned this argument.  *Id.* at 216.  To the extent

they have not, it has no merit given the lack of evidence presented in support of this

defense.

2.    *Deficiencies in Motion for Summary Judgment*

It is important and disturbing to note that some of the Defendants' contentions in

their motion for summary judgment lack factual support, even when viewed in a light

most favorable to Defendants.  For example, in the excessive force section of Defendants'

brief in support of their motion, Defendants argue for dismissal of Plaintiff's excessive

force claim based on Officer Lewis's alleged use of pepper spray (mace):

5

> Plaintiff has alleged that Officer Thomas used mace on him and that Officer
> Lewis used (2 cans) of mace on him. <u>There is no indication that either of
> these events ever happened</u> as described by the Plaintiff.  Plaintiff's
> allegation is only supported by his own self-serving testimony.  By this
> Motion, the burden of proof has shifted to the Plaintiff to come forward
> with more than just bare allegations.  Plaintiff has not and cannot present
> sufficient evidence to support his claims of excessive force.  (#73, p. 4-5)

Defendants' statement leaves the distinct impression that they are arguing Defendant

Lewis did not use pepper spray on the Plaintiff (although Defendants did not provide any

affidavits, deposition testimony, or declarations in support of this assertion).

During the evidentiary hearing, however, instead of denying that Defendant Lewis

had used pepper spray, Defendants presented three separate incident reports documenting

Defendant Lewis's use of pepper spray on Plaintiff (Defendants' Ex. 2).  In addition,

Defendant Lewis testified in detail regarding the incident about which the Plaintiff

complained.  This undisputed evidence that Defendant Lewis did indeed use pepper spray

places the assertions in Defendants' brief perilously close to the line of misrepresenting to

the Court, in violation of Rule 11(b)(4) of the Federal Rules of Civil Procedure.

Defendants' motion for summary judgment was further deficient in its reliance

solely on Defendants' "belief" rather than on evidence.  Plaintiff alleged that the

conditions of his confinement were unconstitutional.  Defendants asked for summary

judgment because they "believe[d], however, that the Plaintiff's conditions of

confinement were not unconstitutional."  (#74, p. 6)  Such a belief, without the support of

any evidence as to the actual conditions of confinement, was insufficient to shift the

burden of production to Plaintiff and rendered Defendants' motion for summary

judgment, essentially, a request to dismiss for failure to state a claim.  The Court had already determined that Plaintiff had stated a claim for relief (#25, 39).

Plaintiff also alleged that his Due Process rights were violated by his placement in lock-down without cause.  Defendants' motion for summary judgment and supporting brief discuss vandalism at the FDCF:  "It is reasonable, under the conditions described by the Plaintiff, that officials in Faulkner County were charged with attempting to shift the inmate population immediately in order to accommodate the increased need for space caused by the inmate vandalism."  (#74, p. 12)

The administrative need to house Plaintiff temporarily in a certain area of the jail would justify Defendants' placement of Plaintiff and would defeat his due process claim. Defendants could have prevailed on this issue in their motion for summary judgment. Defendants failed to provide any evidence in support of their motion, however, that there was an administrative reason for Plaintiff's temporary placement in lock-down.  They did present such evidence at the hearing, so it is puzzling why they did not include it in their motion for summary judgment.  It is black-letter law that courts cannot assume facts favorable to the moving party when assessing the merits of a motion for summary judgment.

In fact, Defendants could have prevailed on most of the claims in this case had they provided evidence to support their motion for summary judgment.  They did not. There were no depositions, no affidavits, no declarations, no answers to interrogatories or requests for admission, and no documentary support for most of Defendants' assertions in

the motion for summary judgment.  If conclusory statements, general denials, and factual

assertions not based on personal knowledge are insufficient to *avoid* summary judgment,

it is axiomatic that they are insufficient to *grant* summary judgment.  Accordingly,

Defendants' motion for summary judgment (#73) must be DENIED.

## V.   <u>Evidence Presented at the Hearing</u>:

During the evidentiary hearing, Plaintiff testified that if he could go back in time,

he likely would not file the lawsuit.  He testified that most of the Defendants were "just

doing their jobs."  He declined, however, to voluntarily dismiss this action.  Plaintiff

maintained that several of the alleged incidents violated his constitutional rights.

### A.  *Conditions of Confinement*

Conditions of confinement claims for pretrial detainees are analyzed under the Due

Process Clause of the Fifth Amendment (as made applicable to states under the

Fourteenth Amendment), and not under the Eighth Amendment, which applies to

convicted persons.  *Vaughn v. Gray*, 557 F.3d 904, 908 (8th Cir. 2009) (citing *Johnson-El

v. Schoemehl*, 878 F.2d 1043, 1048 (8th Cir.1989); *Bell v. Wolfish*, 441 U.S. 520, 535, 99

S.Ct. 1861, 60 L.Ed.2d 447 (1979)).  In spite of this technical distinction, conditions of

confinement claims asserted by pretrial detainees are analyzed under the same "deliberate

indifference" standard as conditions of confinement claims made by convicted persons.

*Butler v. Fletcher*, 465 F.3d 340, 345 (8th Cir. 2006).

Pretrial detainees and convicted inmates, like all persons in custody, have the same right to basic human needs of food, clothing, shelter, medical care, and reasonable safety. *Id*. Accordingly, the same standard of care is appropriate. The Eighth Amendment's "cruel and unusual punishment" standard, however, does not apply. Instead, the injuries detainees suffer must be necessarily incident to administrative interests in safety, security and efficiency. Constitutionally infirm practices are those that are punitive in intent, those that are not rationally related to a legitimate purpose, and those that are rationally related, but are excessive, in light of their purpose. *Bell*, 441 U.S. at 538, n. 20.

In *Bell*, the Supreme Court explained that the Eighth Amendment protects a convicted inmate from "cruel and unusual" punishment, whereas the Due Process Clause restricts punishing a detainee prior to an adjudication of guilt. Therefore, the proper inquiry is whether the conditions imposed amount to punishment of the detainee. *Bell*, 441 U.S. at 535. "The infliction of punishment is a deliberate act intended to chastise or deter." *Butler*, 465 F.3d at 344 (quoting *Wilson v. Seiter*, 501 U.S. 294, 300, 111 S.Ct. 2321 (1991)).

Plaintiff alleged that he spent four or five days in a two-man cell filled with fifteen inmates, that he was deprived of a bunk or sleeping mat, and that he was forced to sleep on the concrete floor that was covered in urine and feces. He alleged that as a result this exposure, he developed hemorrhoids and an open sore caused by exposure to raw sewage.

Plaintiff did not present any evidence of exposure-related injury during the

evidentiary hearing.  He stated that during this time, Defendants Shock and Wilcox denied his multiple requests for a mat and blanket and that Defendant Pickard would not allow Plaintiff to take showers.  In addition, Plaintiff alleged Defendants Byrd and Shock refused to remove Plaintiff from lock-down.

Testimony during the evidentiary hearing showed that Plaintiff was placed in lock-down at about 8 p.m. on October 10, 2008.[1]  Other inmates in lock-down had vandalized and flooded the cell where Plaintiff was housed.  Due to the vandalism, Plaintiff was moved to a large holding cell at about 2:00 a.m.  This holding cell was the two-man cell Plaintiff described that he shared with fourteen other inmates.  The toilet in the holding cell overflowed twice, with the overflow draining into a hole in the middle of the cell floor.  At some point, trusties[2] were sent in to clean the cell.

Plaintiff alleged that he remained in the holding cell for four days (#2, p. 4-5).  It is undisputed from the evidence presented at the hearing that Defendants moved Plaintiff to the large holding cell out of necessity.  Furthermore, Defendants kept the inmates in the

---

[1] This placement in "lockdown" is also the basis of Plaintiff's Due Process claim

[2] A "trusty" is a prisoner who has gained the "trust" of officers and is given various responsibilities in a jail or prison.

holding cell for a limited period of time.  Although the conditions described by Plaintiff were deplorable, the evidence presented demonstrated that Plaintiff's placement was the result of administrative necessity.  When the toilet overflowed, trusties were sent in to clean the cell.  See *Smith v. Copeland*, 87 F.3d 265, 268 (8th Cir.1996) (exposure to raw sewage from an overflowed toilet for four days did not violate the Constitution where Plaintiff was not exposed to disease and did not suffer any adverse consequences as a result of the exposure).  There was no evidence that any of the Defendants placed and left Plaintiff in the holding cell as punishment.  See *Bell*, 441 U.S. at 539 (where a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to punishment).  Accordingly, the claim against Defendants Shock and Byrd for leaving Plaintiff in the holding cell should be DISMISSED WITH PREJUDICE.

Plaintiff alleged that Defendants Shock and Wilcox denied his multiple requests for a mat and blanket during the four days he spent in the large holding cell.  Plaintiff did not clearly testify as to whether he was denied a mat during both night and day, or just during the day.  Defendant Shock testified that he did not have the authority to give Plaintiff a day mat.  Defendant Wilcox testified that the use of a daytime mat was a medical issue.

Plaintiff did submit a request for a day mat, but the nurse, who is not a party to this lawsuit, denied the request.  Plaintiff did not demonstrate the need for, or entitlement to,

use of a day mat at the hearing.  Regardless, none the medical personnel with authority to issue a day mat are parties to this lawsuit.

Defendant Wilcox testified that a night mat and blanket are mandatory.  Further, he was not aware of any instances when an inmate did not receive a night mat.  Defendant Wilcox did concede that it was possible that Plaintiff did not have a night mat when he was moved to the large holding cell at 2:00 a.m.  This instance of temporary deprivation, assuming it occurred, is insufficient to show a constitutional violation.

Plaintiff's allegation that he was denied a mat and blanket for the entire four days he was in the large holding cell is not credible.  Based on Plaintiff's testimony, there would be fourteen inmate witnesses to corroborate this allegation, and there is no supporting testimony in the record.  In any event, even if the allegation were substantiated, there is no evidence that either Defendant Wilcox or Defendant Shock was aware of the denial of a night mat and blanket.  If Defendants Wilcox and Shock were not aware of this alleged depravation, they were not deliberately indifferent, as a matter of law.  See *Lenz v. Wade*, 460 F.3d 991, 995 (8th Cir. 2007) (official cannot be liable for denying inmate humane conditions of confinement unless the official knows of and disregards as excessive risk to inmate health or safety).  Accordingly, the denial of a mat and blanket claim against Defendants Shock and Wilcox should be DISMISSED WITH PREJUDICE.

Plaintiff alleged that Defendant Pickard would not allow him to take showers while in lock-down.  At the evidentiary hearing, Defendant Pickard testified that she was not responsible for taking the detainees to shower.  In fact, Defendant Pickard did not work the shift during which inmates showered, according to her undisputed testimony. After this testimony, Plaintiff apologized to Defendant Pickard for naming her in this lawsuit.  Plaintiff explained that when Defendant Pickard's shift began, he was frustrated because he had not been allowed to shower earlier.  Plaintiff did not name any other Defendant who might have been responsible for denying him showers.  Accordingly, the claim against Defendant Pickard should be DISMISSED WITH PREJUDICE.

B. *Due Process*

Pretrial detainees may not be punished, and whether a particular restriction or condition accompanying pretrial detention is punishment turns on whether the restriction or condition is reasonably related to a legitimate governmental objective.  *Martinez v. Turner*, 977 F.2d 421, 423 (8th Cir.1992) cert. denied, 507 U.S. 1009, 113 S.Ct. 1658 (1993).  Regarding disciplinary segregation, a plaintiff must receive advance notice of the claimed violations, have an opportunity to present evidence on his behalf at the disciplinary proceeding, including the right to call witnesses, and receive a written statement by the disciplinary committee of its findings.  *Wolff v. McDonnell*, 418 U.S. 539, 564-66, 94 S.Ct. 2963 (1974).

Plaintiff alleged that Defendant Roberson placed him in lock-down without just cause. Although not clearly explained by Plaintiff, this allegation appears to relate to two separate incidents. The first incident occurred around October 10 or 12, 2008 (#2, p. 4).[3] On this occasion, it appears that Defendant Roberson cited Plaintiff and another inmate for kicking a cell door (#75-6, p. 1). Plaintiff stated that he was disciplined for knocking on the cell window. It appears Plaintiff received notice of the charges and a review (#75-6, p. 2, 4). The reviewing officer gave Plaintiff credit for time served. Plaintiff interpreted this action as a sentence of zero days in lock-down.

Defendants agree that Plaintiff "prevailed" on his appeal of this disciplinary, but they contend that Plaintiff was left in isolation after this to "accommodate the increased need for space caused by the inmate vandalism," and not as punishment (#74, p. 12). Testimony during the evidentiary hearing supports Defendants' assertion that administrative need, not intent to punish, was the cause of Plaintiff's stay in lock-down after he prevailed in his appeal. Plaintiff has not provided any evidence to the contrary.

The second incident occurred around November 22, 2008. Plaintiff alleged that he was placed in the "hole" even after the reviewing officer, Officer Hall, declined to sentence Plaintiff to any days in lock-down (#20, p. 1). It appears that Plaintiff admitted at least one disciplinary infraction related to this incident (#75-6, p. 6). It also appears

---

[3] The incident report lists the incident date as October 12, 2008 (#75-6, p. 1). Plaintiff's allegations and the incident review state Plaintiff began his time in lock-down on October 10, 2008 (#2, p. 4; #8, p. 2-3; #75-6, p. 2). There is no evidence to indicate that two separate disciplinary issues arose during this time.

that officials at the FCDC did not strictly comply with the requirements of Due Process.

See *Wolff v. McDonnell*, 418 U.S. 539, 564-66, 94 S.Ct. 2963 (1974) (due process in

prison disciplinary proceeding require advance notice of the claimed violations, a written

statement by the disciplinary committee of its findings, and the right to call witnesses).

Regardless, Plaintiff has failed to show that any one of the named Defendants was

responsible for the inadequate review process.  Neither of the officers reviewing

Plaintiff's alleged disciplinary violations are Defendants in this matter.  Because Plaintiff

has failed to connect any of the named Defendants to a violation of his Due Process

rights, the claims against these Defendants should be DISMISSED WITH PREJUDICE.

C. *Excessive Force*

When reviewing an excessive force claim, courts should consider the objective

need for applying force, the relationship between the need and the degree of force used,

the threat the officials reasonably perceived, any other efforts used to diminish the

severity of a forceful response, and the extent of the injury inflicted.  *Walker v. Bowersox*,

526 F.3d 1186, 1188 -1189 (8th Cir. 2008) (citing *Hudson v. McMillian*, 503 U.S. 1, 7,

112 S.Ct. 995 (1992)).

The use of force against Plaintiff, a pretrial detainee, must have been necessary to

further some legitimate institutional interest such as safety, security, or efficiency.

Furthermore, the force used must not have exceeded the degree to which a reasonable

officer would have believed necessary to achieve those goals.  *Johnson-El v. Schoemehl*,

878 F.2d 1043, 1048 (8th Cir. 1989).  Force may be justified to make an inmate comply

with a lawful prison regulation or order, but only if the inmate's noncompliance also poses a threat to other persons or to prison security. *Treats v. Morgan*, 308 F.3d 868, 875 (8th Cir. 2002).

Plaintiff alleged in his unverified, amended complaint (#8) that Defendant Shock ordered Officer Thomas to pepper spray him without sufficient cause. Plaintiff alleged that Defendant Shock then refused to allow Plaintiff to wash off the pepper spray. During the evidentiary hearing, however, Plaintiff testified that Defendant Shock did not use excessive force against him and that Defendant Thomas had not pepper sprayed him. Defendants Shock and Thomas both testified that they had not participated in a pepper-spray incident involving Plaintiff. The only allegation of excessive force presented during the evidentiary hearing against Defendants Shock and Thomas was that Defendant Thomas grabbed and escorted Plaintiff roughly. This allegation falls far short of a constitutional violation. Accordingly, the excessive force claims against Defendants Shock and Thomas should be DISMISSED WITH PREJUDICE.

Plaintiff alleged in his verified complaint (#2) that on one occasion, Officer Lewis doused him with two cans of pepper spray simply because Officer Lewis was upset. Both Plaintiff and Defendant Lewis testified that Plaintiff was not the intended target of the pepper spray in that incident. The testimony largely reflected the information included in incident reports Defendants provided at the evidentiary hearing (Defendants' Ex. 2).

On that occasion, Plaintiff was in a large holding cell with an inmate who was causing a disturbance. While Defendant Lewis attempted to remove the rowdy inmate

from the holding cell, the inmate began swinging his arms and resisting.  At that point,

Defendant Lewis attempted to pepper spray the inmate.  The pepper spray canister

malfunctioned, resulting in pepper spray on the right side of Defendant Lewis's face.[4]

Defendant Lewis then took pepper spray from another guard and used it against the

unruly inmate (not the Plaintiff).

At some point during the scuffle, as Defendant Lewis either was entering or

leaving the holding cell, he pushed Plaintiff out of his way.  Plaintiff and the other

inmates in the holding cell were removed from the cell and handcuffed to a bench until

the cell could air out.[5]  After removing the other inmates from the holding cell, an officer

removed the offending inmate.

This incident does not provide the basis for a claim of a constitutional violation.

Defendant Lewis's *de minimis* use of force when pushing Plaintiff is insufficient to

support a finding of excessive force.  *Andrews v. Fuoss*, 417 F.3d 813, 818 (8th Cir.

2005) (citations omitted).

Regarding the use of pepper spray, Plaintiff himself acknowledged that Defendant

Lewis was defending himself against a violent inmate.  He also agreed that Defendant

Lewis did not intend to spray the Plaintiff.  Thus, Defendant Lewis's actions were

---

[4] Plaintiff disputed the assertion that Defendant Lewis had pepper spray on his face.  Regardless, the record is clear that Defendant Lewis and Plaintiff were inadvertently exposed to similar amounts of pepper spray.

[5] This allegation provided the basis for Plaintiff's "hitching post" claim.

17

reasonable and in furtherance of the legitimate need to maintain security within the FDCF.  Accordingly, this excessive force claim against Defendant Lewis should be DISMISSED WITH PREJUDICE.

Likewise, Plaintiff's temporary confinement to a bench (labeled a "hitching post" in the complaint) after he was evacuated from the cell where pepper spray had been discharged, did not violate his constitutional rights.  Plaintiff stated there was no need to handcuff him to the bench because there were secure doors outside of the holding cell that would have kept Plaintiff and the other inmates from escaping.  Defendants, however, were under no obligation to allow Plaintiff to wander freely about during a disturbance.

Defendants Shock and Thomas temporarily handcuffed Plaintiff to a bench to allow the holding cell to air out.  In addition, they allowed Plaintiff to shower off any residual pepper spray when requested.  This incident does not evidence a constitutional violation.  Accordingly, the "hitching post" claim against Defendants Shock and Thomas should be DISMISSED WITH PREJUDICE.

Plaintiff's final allegation regarding excessive force involves an incident that occurred on November 22, 2008, when Defendant Roberson pepper sprayed Plaintiff. Defendant Roberson completed an incident report regarding this use of pepper spray (#75-6, p. 5).  Neither party disputes the essential facts leading up to the incident, although their versions of the events vary slightly.

Defendant Roberson took Plaintiff to a room to change his uniform before going to "lock-down."  While Defendant Roberson accompanied Plaintiff into the changing room,

two other officers waited outside.  Defendant Roberson testified that Plaintiff was dressing slowly.  Defendant Roberson threatened Plaintiff with the use of pepper spray either because Plaintiff was refusing to dress, or because he was dressing too slowly. Plaintiff eventually dressed, as ordered.

When Plaintiff was finished changing clothes, he picked up either a bar of soap, or multiple bars of soap.  He refused an order from Defendant Roberson to drop the soap, and Defendant Roberson pepper sprayed Plaintiff in the face.

Plaintiff testified that Defendant Roberson had no reason to spray him because he was only trying to keep soap in order to shower.  Defendant Roberson testified that Plaintiff disregarded three warning, and that when Defendant Roberson moved toward Plaintiff to forcibly remove the soap from Plaintiff's hand, Plaintiff clenched his fist around the soap.  At that point, Defendant Roberson pepper sprayed Plaintiff and notified the two officers standing outside the room that he had just used pepper spray.

Although Plaintiff's fist-clenching could be construed as threatening, Defendant Roberson testified precisely to the contrary.  He testified at the hearing that did <u>not</u> feel threatened and further testified that Plaintiff had not made any threatening movements toward him.  Instead, Defendant Roberson testified that he pepper sprayed Plaintiff for noncompliance with his order to put the soap down.

Noncompliance, standing alone, is an insufficient justification to pepper spray a nonthreatening, though disobedient, pretrial detainee in the face and eyes.  Defendant Roberson's use of pepper spray against Plaintiff is the only claim on which Plaintiff can

prevail.  Although Defendants argue that Roberson's use of pepper spray was justified, the facts do not allow such a conclusion.

Although Plaintiff had previous disciplinary issues, none were for violent behavior.  More important, Defendant Roberson testified that he sprayed Plaintiff solely for noncompliance with an order to drop the soap Plaintiff was holding.  Although Defendant Roberson warned Plaintiff, he did not attempt any less forcible means to gain Plaintiff's compliance before dousing him with pepper spray.  At the time of the incident, there were two other officers just outside the changing room, and Defendant Roberson did not request assistance from the two other officers until after he had sprayed Plaintiff.

Noncompliance alone is an insufficient justification to pepper spray a nonthreatening pretrial detainee in the face and eyes.  Defendant Roberson's actions were excessive in light of the need to use force, the type of force used, and the rationale for the use of force.

D. *Qualified Immunity*

Defendants raised qualified immunity in their answer and in their motion for summary judgment (#73).  Qualified immunity shields public officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982).  The purpose of qualified immunity is to ensure that officers are on notice that their conduct is unlawful before they are subjected to suit.  *Hope v. Pelzer*, 536 U.S. 730, 739, 122 S.Ct. 2508 (2002).

Courts are no longer required to use a two-step sequential analysis when addressing qualified immunity. *Pearson v. Callahan*, __ U.S. __, 129 S.Ct. 808 (2009) (abrogating the sequential analysis requirement in *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151(2001)). The analysis still requires two steps, however. *Id.* Courts must determine, in no particular sequence: (1) whether the offending conduct violated a constitutional or statutory right; and (2) whether such a right was clearly established at the time of the alleged conduct. *Krout v. Goemmer*, __ F.3d __, 2009 WL 3172180 (8 th Cir. 2009) (citations omitted).

In 2001, the Supreme Court significantly narrowed the meaning of "clearly established constitutional or statutory rights" in the context of qualified immunity. The Court directed lower courts to analyze a defendant's conduct "in light of the specific context of the case, not as a broad general proposition." *Saucier*, 533 U.S. at 201, 121 S.Ct. 2151. The Supreme Court has rejected, however, the argument that cases must have fundamentally or materially similar facts to the case at hand in order to clearly establish a right or proscribe certain conduct. *Hope v. Pelzer*, 536 U.S. 730, 741, 122 S.Ct. 2508 (2002).

Instead, the question is whether the state of the law at the time of the incident gave the state actors fair warning that their conduct was unconstitutional. *Id.* "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Davis v. Hall*, 375 F.3d 703, 712 (8th Cir.2004). "This standard 'gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly

violate the law.'" *Stufflebeam v. Harris*, 521 F.3d 884, 888-889 (8th Cir. 2008) (quoting

*Hunter v. Bryant*, 502 U.S. 224, 229, 112 S.Ct. 534 (1991)).

Under the Due Process Clause, jail personnel cannot punish a pretrial detainee

prior to conviction. *Williams-El v. Johnson*, 872 F.2d 244, 228 (8th Cir. 1989).  The law

is clearly established that force in excess of what is necessary to achieve institutional

interests such as safety, security or efficiency constitutes punishment of a pretrial

detainee. *Johnson-El v. Schoemehl*, 878 F.2d 1043, 1048 (8th Cir. 1989).

The analysis cannot end there, however.  Qualified immunity must be assessed

more narrowly.  The precise question for purposes of deciding whether excessive force

was used in this case is whether Defendant Roberson's application of pepper spray to

Plaintiff's face after only verbal orders to drop the soap, when there was no actual or

perceived threat of harm, was a violation of Plaintiff's rights.  If it was a violation, the

Court must determine whether the law clearly established at the time of the incident.

Under the undisputed facts, the use of pepper spray was excessive in this instance.

"It is . . .clearly established that force may be justified to make an inmate comply with a

lawful prison regulation or order, but *only if the inmate's noncompliance also poses a*

*threat to other persons or to prison security*." *Treats v. Morgan*, 308 F.3d 868, 875 (8th

Cir. 2002) (emphasis added) (citing *Lawrence v. Bowersox*, 297 F.3d 727, 732 (8th Cir.

2002); *Jones v. Shields*, 207 F.3d 491, 496-497 (8th Cir. 2000); *Hickey v. Reeder*, 12 F.3d

754, 759 (8th Cir. 1993); *Stenzel v. Ellis*, 916 F.2d 423, 426-427 (8th Cir. 1990)).  Based

on clearly established law in the Eighth Circuit, using pepper spray to make an inmate

obey an order, in the absence of any threat to people or prison security, and before any

other means are used to force compliance, constitutes excessive force.  Accordingly,

Defendant Roberson is not immune from liability for his excessive use of force against

Plaintiff.

E. *Damages*

There are three categories of monetary damages which a prevailing party may

recover in cases filed under 42 U.S.C. § 1983:  nominal, actual (compensatory), and

punitive.  Nominal damages are appropriate when it is not possible to place a monetary

value on Plaintiff's damages.  *Cowans v. Wyrick*, 862 F.2d 697 (8th Cir. 1988).  Actual or

compensatory damages are to compensate a person for injuries caused by the deprivation

of constitutional rights.  *Memphis Community School Dist. V. Stachura*, 477 U.S. 299

(1986).  Punitive damages are awarded for the sole purpose of punishing a defendant and

deterring future misconduct.

The sum of damages that will fairly and justly compensate Plaintiff in this case is

difficult to ascertain.  That does not mean only nominal damages are warranted.  Plaintiff

has presented sufficient evidence of pain and suffering to warrant actual damages, even

though he did not present evidence of medical expenses or lost wages.  Plaintiff has

failed, however, to present sufficient evidence to consider an award of punitive damages.

Defendants argue that Plaintiff suffered only *de minimus* injuries that would not

justify an award of damages (#74, p. 13).  The Eighth Circuit Court of Appeals has

repeatedly held that not all applications of pepper spray result in merely *de minimus*

23

injury.  *Treats*, 308 F.3d at 872 (citing *Lawrence v. Bowersox*, 297 F.3d 727, 731 (8th Cir. 2002)).

In the present case, Defendant Roberson pepper sprayed Plaintiff at around 5:20 p.m. on November 22, 2008 (Defendants' Ex. 1).  Plaintiff suffered pain and burning that lasted beyond the initial pepper spray to the face.  On November 23, 2008, Plaintiff informed FCDF officials:

> My eyes are still burning a day later after being maced.  My vision is currently still blurry and I can't stop twitching my eyes, and I still haven't received soap nor a towel to shower and dry off.  I don't understand why I'm being treated like this.  (#20, p. 26 and 29)

An unidentified officer receiving the grievance responded, "Sir towels are given out at 0600 in 204 Lockdown.  The others need to be in medical grievance."  (#20, p. 26 and 29) It appears from this response that the official recognized that Plaintiff needed medical attention as the result of pepper spray to the face.

Defendants presented Plaintiff's jail medical file, and there is no evidence in the file that Plaintiff received soap or a towel, or anything to alleviate the burning, blurry vision, or twitching (#75-3, p. 1-37).  It appears Plaintiff was forced to wait until six o'clock the next morning to receive soap and a towel to wash the residual pepper spray from his face.  This two days of burning could be considered an extension of the use of force against Plaintiff.  Regardless, it shows Plaintiff suffered sufficient pain to warrant an award of actual damages.

Plaintiff should receive $500.00 to fairly and justly compensate him for pain and suffering caused by the initial pepper spray in the face and eyes, and the two days of burning, blurred vision, and twitching.  While more than nominal damages, this is by no means a large award.  Considering that Plaintiff suffered no permanent injury, $500.00 is a reasonable sum.  See *Hill v. McKinley*, 311 F.3d 899 (8th Cir. 2002) (bruising caused by restraints during violation of Plaintiff's privacy sufficient for $2,500.00 award of compensatory damages); *Coleman v. Rahija*, 114 F.3d 778 (8th Cir. 1997) (two hours of pain and suffering caused by delay in transporting Plaintiff to hospital while in labor was sufficient for compensatory award of $1,000.00); *Jackson v. Crews*, 873 F.2d 1105 (8th Cir. 1989) ($5,231.75 award in compensatory damages and $50,000.00 award in punitive damages warranted where officer slammed Plaintiff's face into the pavement, causing Plaintiff to incur $231.75 in medical expenses); *Williams v. Omodt*, 640 F. Supp. 120 (D.Minn. 1986) ($5,000.00 award in compensatory damages proper where Plaintiff suffered bruises, contusions, swelling, and considerable pain, but no permanent physical injury, as the result of excessive force).

## VI.    Conclusion:

The Court recommends that Defendants' Motion to Dismiss (#67) and Motion for Summary Judgment (#73) be DENIED.  In addition, this Court recommends an award of $500.00 for Plaintiff regarding the use of excessive force by Defendant Roberson.  This Court further recommends that all other pending claims be DISMISSED WITH PREJUDICE.

Dated this 30th day of October, 2009.


_____

UNITED STATES MAGISTRATE JUDGE